COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES, | § | No. 08-15-00256-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 346th District Court |
| | § | |
| LORI LOYA, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 2013DCV1845) |
| | § | |

## O P I N I O N

Lori Loya sued her former employer, the Texas Department of Aging and Disability Services (DADS), for sex discrimination, hostile work environment, and retaliation under the Texas Commission on Human Rights Act (TCHRA). DADS filed a plea to the jurisdiction based on sovereign immunity, which the trial court denied. We reverse and dismiss all of Loya's claims for lack of jurisdiction.

## BACKGROUND

DADS hired Loya to work at the El Paso State Supported Living Center as an administrative assistant. She reported to Jaime Monardes, the director of the Center. Monardes fired Loya less than two months' later, during her probationary period. Loya filed charges of discrimination and retaliation with the Civil Rights Division of the Texas Workforce Commission.

The Commission later issued a right to sue letter without making any findings.

Loya then sued DADS for wrongful termination, alleging discrimination, retaliation, and hostile work environment.[1] In her Second Amended Petition, Loya alleged she reported several harmful and unsafe incidents and practices to Monardes and other managers that included sexual attacks by residents on staff of the Center. In response, Monardes began to treat Loya "in a negative and hostile manner." In particular, she alleged Monardes responded "that everyone had sexual needs and he proceeded to place his hands in the crotch area of his pants[,] . . . [and] exposed his abdomen . . . in the course of his making fun of her for her concerns and explaining to her that the residents had sexual needs." Loya also alleged that she complained to the benefits coordinator Irene Huerta "about Monardes' sexual misconduct and overall demeaning behavior and hostile work environment." Loya additionally claimed that after her termination, Monardes accused her "of stealing flash drives or some other property at her workplace" and that "upon information and belief, believes such allegations of theft are in retaliation for her complaints and/or pretext for her termination."

In response, DADS filed a plea to the jurisdiction, asserting Loya could not demonstrate a prima facie case under TCHRA and therefore could not bring her claims within the limited waiver of sovereign immunity TCHRA provides. In particular, DADS argued in part that: (1) Loya's sex discrimination claim failed because she failed to plead and prove she was replaced by a similarly qualified male or otherwise terminated due to her gender; (2) Loya's hostile work environment claim failed because she could not show she had suffered severe and pervasive sexual harassment; and (3) Loya's retaliation claim failed because she could not show an adverse

---

[1] Loya also sued for slander. The trial court dismissed Loya's slander claim for lack of jurisdiction in response to DADS' first plea to the jurisdiction.

employment action or a causal connection between any alleged protected activity and her termination. Loya responded with jurisdictional evidence of her own. After hearing, the trial court denied DADS' plea without specifying the basis for its ruling.

## DISCUSSION

In three issues, DADS argues the trial court erred in denying its plea to the jurisdiction. We conclude the trial court erred in refusing to dismiss Loya's claims for lack of jurisdiction.

## Standard of Review

A plea to the jurisdiction based on sovereign immunity challenges a trial court's subject matter jurisdiction. *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004); *Esparza v. Univ. of Texas at El Paso*, 471 S.W.3d 903, 908 (Tex.App. – El Paso 2015, no pet.). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Miranda*, 133 S.W.3d at 226, 228; *Esparza*, 471 S.W.3d at 908. In a plea to the jurisdiction, a defendant may challenge either the adequacy of the plaintiff's pleadings or the existence of "jurisdictional facts" on the ground that they do not support a finding of subject matter jurisdiction. *Miranda,* 133 S.W.3d at 226; *City of El Paso v. Collins*, __S.W.3d__, 2016 WL 240882, at *4 (Tex.App. – El Paso Jan. 20, 2016, no pet.). The questions whether the plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, as well as whether undisputed evidence of jurisdictional facts establishes a trial court's lack of jurisdiction, are both questions of law that an appellate court reviews *de novo*. *Miranda,* 133 S.W.3d at 226; *Collins*, 2016 WL 240882, at *4.

In determining whether a plaintiff has carried her burden to allege facts sufficient to establish subject matter jurisdiction, we review the allegations in the pleadings – accepting them as

3

true and construing them in the plaintiff's favor – and any evidence relevant to the inquiry. *Miranda*, 133 S.W.3d at 226-27; *Esparza*, 471 S.W.3d at 908; *Mayfield v. Tarrant Regional Water Dist.*, 467 S.W.3d 706, 711 (Tex.App. – El Paso 2015, no pet.). If the evidence raises a fact question on jurisdiction, the plea must be denied. *Miranda*, 133 S.W.3d at 227-28; *Esparza*, 471 S.W.3d at 908; *Mayfield*, 467 S.W.3d at 711. If the defendant's evidence is undisputed and demonstrates a lack of jurisdiction, and if the plaintiff's responsive evidence does not raise a fact question on the jurisdictional issue, the trial court must grant the plea to the jurisdiction as a matter of law. *Mayfield,* 467 S.W.3d at 711-12.

## Sovereign Immunity

As a governmental entity, DADS is generally immune from suit. *See San Antonio Water Sys. v. Nicholas,* 461 S.W.3d 131, 135 (Tex. 2015); *Esparza*, 471 S.W.3d at 908; *see also Texas Dep't of Aging & Disability Servs. v. Sierra Home Care, L.L.C.*, 235 S.W.3d 835, 838 (Tex.App. – El Paso 2007, no pet.) (recognizing DADS as a governmental entity subject to sovereign immunity). However, the Legislature has waived immunity for claims properly brought under TCHRA. *San Antonio Water Sys.,* 461 S.W.3d at 135; *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 660 (Tex. 2008); *Esparza*, 471 S.W.3d at 908. But, that waiver extends only "to those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *San Antonio Water Sys.,* 461 S.W.3d at 135 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 636 (Tex. 2012)); *Esparza*, 471 S.W.3d at 908. To establish a trial court's jurisdiction over her TCHRA claim, a plaintiff must plead the elements of her statutory cause of action—the basic facts that make up her prima facie case. *See San Antonio Water Sys.,* 461 S.W.3d at 135; *Mission Consol. Indep. Sch. Dist.,* 372 S.W.3d at 636;

4

*Esparza*, 471 S.W.3d at 908.

## Sex Discrimination Claim

Under TCHRA, an employer commits an unlawful employment practice if employer discharges an individual because of her sex. TEX. LAB. CODE ANN. § 21.051(1) (West 2015). In a discrimination case based on circumstantial evidence, as here, the plaintiff must first establish a prima facie case. *Esparza*, 471 S.W.3d at 908; *El Paso Community College v. Lawler,* 349 S.W.3d 81, 86 (Tex.App. – El Paso 2010, pet. denied). To establish a prima facie case of gender discrimination, a plaintiff is required to prove: (1) she is a member of a protected class; (2) she was qualified for her position; (3) her employment was terminated; and (4) she was treated less favorably than similarly situated members of the opposing class. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). DADS contends in part that Loya failed to plead facts and produce evidence on the fourth element, *i.e.*, that she was (i) replaced with a similarly qualified male, (ii) was treated less favorably than males who were similarly situated, or (iii) was otherwise discharged due to her gender. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (noting that a plaintiff can meet the fourth element by showing she was replaced with a similarly qualified person who was not a member of the protected class, that similarly situated employees were treated more favorably, or that she was otherwise discharged due to her sex).

Loya did not allege that she was replaced by a male after her termination, and DADS presented evidence that Loya was replaced by a female, who worked with Monardes until he resigned. Thus, the evidence establishes as a matter of law that Loya was not replaced by a similarly qualified male.

5

That does not end our inquiry, however. To prevail on a claim of gender discrimination, a plaintiff can also prove that she was "treated less favorably than similarly situated members of the opposing class[.]" *Monarrez,* 177 S.W.3d at 917; *see also Esparza*, 471 S.W.3d at 911. The Texas Supreme Court has held that "[e]mployees are similarly situated if their circumstances are comparable in all material respects[.]" *Monarrez,* 177 S.W.3d at 917. The Fifth Circuit has articulated a similar standard, stating that employees are similarly situated if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.,* 395 F.3d 206, 213 (5th Cir. 2004); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001); *see also Herbert v. City of Forest Hill,* 189 S.W.3d 369, 376 (Tex.App. – Fort Worth 2006, no pet.) ("More favorable treatment of a person outside a protected class can be used to show discrimination only if the circumstances are nearly identical."). Loya admits there are no male comparators that would meet this standard because the only other administrative assistants were females.[2] Consequently, Loya could have neither alleged nor produced any evidence that she was treated less favorably than similarly situated males.

Moreover, we are unpersuaded by Loya's contention that a reasonable inference could be made that she was otherwise terminated because of her gender. Loya contends she suffered discrimination because Monardes once exposed a portion of his abdomen to her and placed his hands in the crotch area of his pants. Loya fails to explain and we fail to see how these actions could show Loya was otherwise discharged due to her gender. In any event, DADS' jurisdictional evidence contained the statements of multiple female employees that Monardes was a large man whose shirt would often come untucked, and that he had a "compulsive tick" where he

---

[2] In this regard, the two individuals Loya asserts were treated more favorably were female, not male. And, the sum of the "more favorable treatment" Loya identifies is that one of the females "wasn't held to the same policies that I was."

routinely tucked in his shirt or adjusted his pants. None found this act offensive or sexually suggestive. And, we do not find any responsive jurisdictional evidence suggesting that Loya was otherwise terminated due to her gender.

Accordingly, we conclude the trial court erred in denying DADS' plea to the jurisdiction on Loya's sex discrimination claim. Issue One is sustained.

## Hostile Work Environment Claim

DADS attacked Loya's hostile work environment claim based on the sufficiency of her pleadings. DADS contended Loya had not alleged that she suffered the severe and pervasive sexual harassment necessary to establish a prima facie case of hostile work environment. We agree.

A plaintiff has a heavy burden to establish a hostile work environment claim based on sexual harassment. To make a prima facie showing of a hostile work environment involving sexual harassment, a plaintiff must prove in part that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile or abusive working environment. *Mayfield*, 467 S.W.3d at 712-13; *Esparza*, 471 S.W.3d at 912; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Abusiveness requires extreme conduct and does not include conduct that is merely offensive. *See Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913.

Further, the conduct must be both objectively and subjectively hostile or abusive. *Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913. That is, the work environment must be both one that a reasonable person would find hostile or abusive and one that the victim in fact

7

perceived to be so. *Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913; *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex.App. – Eastland 2005, pet. denied). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is not actionable. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370; *Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913.

In assessing objective hostility or abusiveness, the discriminatory conduct is viewed from the perspective of a reasonable person in the plaintiff's position in the same circumstances. *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998); *Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913. We consider the totality of the circumstances including the frequency and severity of the alleged conduct, whether there were physical threats or humiliation, and whether the abusive conduct unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371; *Mayfield*, 467 S.W.3d at 713; *Esparza*, 471 S.W.3d at 913.

In pleading her hostile work environment claim, Loya specified only one instance of any hostile or abuse conduct. Loya alleged in conclusory fashion that when she reported the incidents of resident sexual assaults to Monardes, he "began to treat [her] in a negative and hostile manner." Loya's only specific factual allegation asserted that:

> Monardes' response to Plaintiff was that everyone had sexual needs and he proceeded to place his hands in the crotch area of his pants. Monardes exposed his abdomen to Plaintiff in the course of his making fun of her for her concerns and explaining to her that the residents had sexual needs. Monardes proceeded to make fun of Plaintiff for her complaints about the sexual incidents that occurred at the center.

Loya alleged only one instance of abusive conduct. Loya thus failed to make any factual allegations showing the "pervasive" harassment necessary to support a hostile work environment

8

claim. Further, Loya made no allegations of any physical threats, and she made no assertions that Monardes' conduct interfered with her work performance. Moreover, Loya failed to allege that Monardes' behavior affected a term, condition, or privilege of employment, or that the harassment, if any, was based on her gender. In addition, DADS presented evidence containing the statements of multiple female employees explaining Monardes' actions and establishing that none found his actions offensive or sexually suggestive.

In short, Loya failed to plead, and to prove in response to DADS' jurisdictional evidence, that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her employment and create a hostile or abusive working environment. Loya failed to allege facts necessary to support her hostile work environment claim, and the evidence demonstrates that the necessary jurisdictional facts do not exist. "Where the pleadings and evidence demonstrate that the necessary jurisdictional facts do not exist . . . [a]llowing plaintiffs the chance to amend when they have already marshaled their facts in this manner would simply serve no purpose." *See Mayfield,* 467 S.W.3d at 715; *Esparza*, 471 S.W.3d at 914. Accordingly, we conclude the trial court erred in refusing to dismiss Loya's hostile work environment claim.[3] Issue Two is sustained.

### Retaliation Claim

We also conclude the trial court erred in refusing to dismiss Loya's retaliation claim. TCHRA prohibits employers from engaging in retaliatory action against an employee who

---

[3] To the extent Loya asserted a quid pro quo sexual harassment claim, it would fail as well. Quid pro quo sexual harassment requires a showing that submission to the unwelcome advances was an express or implied condition for receiving job benefits or that refusal to submit resulted in a tangible job detriment. *Mayfield*, 467 S.W.3d at 712; *Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671, 677-78 (Tex.App. – El Paso 1997, writ denied). Loya does not assert that Monardes subjected her to requests for sexual favors, that submission to unwelcome advances was an express or implied condition for receiving job benefits, or that a refusal to submit resulted in a tangible job detriment. Further, Loya admits that Monardes never propositioned her for sexual favors, and that, although Monardes said he would discuss her concerns about resident assaults on staff "over some beers," he never suggested a time or place to do so.

opposes a discriminatory practice, makes or files a charge, files a complaint, or participates in an investigation, proceeding, or hearing.   TEX. LAB. CODE ANN. § 21.055 (West 2015).   To establish a violation, the employee must show that: (1) she engaged in an activity protected by TCHRA; (2) an adverse employment action occurred; and (3) there exists a causal link between the protected activity and the adverse action.   *San Antonio Water Sys.,* 461 S.W.3d at 137; *Esparza*, 471 S.W.3d 914.   DADS' plea to the jurisdiction contended in part there was no adverse employment action or causal connection, because Loya's pleadings and the jurisdictional evidence demonstrated the claimed retaliatory events occurred after her termination.   Loya made two possible allegations of retaliation.   First, she alleged that she was terminated because she "complained to Irene Huerta about Monardes' sexual misconduct and overall demeaning behavior and hostile work environment."   While Loya's pleadings did not state when she complained to Huerta, Loya admitted in her deposition that she did not make her complaint to Huerta until *after* she had received notice of her termination.   In other words, DADS' alleged retaliatory action in terminating Loya occurred before Loya's alleged protected activity, her complaint to Huerta.   It is axiomatic that Loya's alleged protected activity could not have been the cause of Loya's termination because Loya was terminated before Loya made her complaint to Huerta.   *See Esparza,* 471 S.W.3d at 914 (employer's alleged retaliatory acts that occurred before plaintiff filed EEOC charge could not have been caused by the EEOC filing); *Gumpert v. ABF Freight Sys., Inc.,* 293 S.W.3d 256, 263 (Tex.App. – Dallas 2009, pet. denied) (plaintiff cannot show a causal link in a retaliation claim when the employer's alleged acts in retaliation occurred long before the plaintiff engaged in any protected activity); *see also Canutillo Indep. Sch. Dist. v. Farran,* 409 S.W.3d 653, 656 (Tex. 2013) (in Whistleblower Act claim, plaintiff failed to show his report to law

10

enforcement caused the adverse personnel action, because the personnel action occurred before plaintiff's report to law enforcement).

For similar reasons, we conclude Loya's retaliation claim based on Monardes' accusation of theft must fail. In her second allegation of retaliation, Loya alleged that *after* her termination, Monardes accused her of stealing from the workplace, and then asserted that she "believes such allegations of theft" were "in retaliation for her complaints and/or pretext for her termination." For the same reasons discussed above, the theft accusation could not have been a "pretext for her termination" as alleged, since they occurred after Loya's termination.

And, even assuming the theft accusations were in retaliation for Loya's complaints to Huerta, they would not be actionable. To constitute an adverse employment action, post-termination conduct must have a "tangible adverse effect" on the terms and conditions of the plaintiff's current or prospective employment. *Cantu v. Hidalgo County*, 398 S.W.3d 824, 829 (Tex.App. – Corpus Christi 2012, pet. denied). It is an employee's discharge that evidences actionable retaliation, and *not* events subsequent to and unrelated to her employment. *See Veprinsky v. Fluor Daniel, Inc*., 87 F.3d 881, 888 (7th Cir. 1996). Loya's pleadings show that Monardes did not accuse Loya of theft until after she had been terminated. Further, Loya's pleadings do not show that the post-termination theft accusation had any tangible adverse effects on any prospective employment. In fact, Loya stated in her deposition that she had no proof that she had ever been denied employment because of the theft allegation. And, she admitted that she had been hired by a school district in August 2012, shortly after her employment at the Center was terminated.

Accordingly, we conclude the trial court erred in refusing to dismiss Loya's retaliation claims. Issue Three is sustained.

## CONCLUSION

Loya failed to plead the basic facts that make up her prima facie case for conduct that would violate TCHRA, and she further failed to present evidence to raise a fact issue on her claims in response to DADS' jurisdictional evidence. Thus, Loya failed to carry her burden to establish a waiver of sovereign immunity that would bestow subject-matter jurisdiction on the trial court over her TCHRA claims. *Miranda*, 133 S.W.3d at 226-27; *Esparza*, 471 S.W.3d at 908; *Mayfield*, 467 S.W.3d at 711. Accordingly, we reverse the trial court's order denying DADS' plea to the jurisdiction and dismiss with prejudice all of Loya's claims for lack of jurisdiction.


STEVEN L. HUGHES, Justice

April 27, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

12