Opinion issued August 26, 2021



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00830-CV

_____

## DAVID DEVILLE, Appellant

## V.

## THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Appellee

On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2017-46576

# O P I N I O N

Appellant David Deville sued his former employer—The University of Texas

M.D. Anderson Cancer Center ("M.D. Anderson")—for disability discrimination

under the Texas Commission on Human Rights Act ("TCHRA") on the theory that

he was terminated less than three months after returning from disability leave following a stroke. M.D. Anderson filed a plea to the jurisdiction, asserting that it retained sovereign immunity from suit because Deville did not plead a prima facie case of disability discrimination despite having an adequate opportunity to do so. The trial court granted M.D. Anderson's plea and dismissed Deville's suit.

Deville appeals on the grounds that (1) he was not required to plead a prima facie case at the pleadings stage in order to trigger the waiver of sovereign immunity under the TCHRA; and (2) in the alternative, he satisfied his burden to plead a prima facie case of disability discrimination. We hold that Deville was required to plead a prima facie case of disability discrimination to trigger a waiver of M.D. Anderson's sovereign immunity, and Deville carried his pleading burden in this case. We reverse and remand for further proceedings.

**Background**

Unless the party filing a plea to the jurisdiction has challenged and conclusively negated a jurisdictional fact pled by the plaintiff, we must assume the fact to be true for purposes of our jurisdictional analysis. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Jones v. City of Dallas*, 310 S.W.3d 523, 529 (Tex. App.—Dallas 2010, pet. denied). Because M.D. Anderson has not attempted to conclusively negate the facts that Deville pleaded at this juncture, we recount the facts as Deville pleaded them.

2

M.D. Anderson hired Deville as the Director of the Financial Clearance Center on December 7, 2015. He reported to Angela Bailey, the Executive Director. Two weeks later, on December 21, Deville was admitted to the hospital. He suffered a hemorrhagic stroke the following day, which required him to take disability leave for the next three months. On March 21, 2016, Deville returned to work with minimal restrictions on his ability to perform his job duties.

When Deville returned to work, he could perform the essential functions of his job, but M.D. Anderson subjected him to less favorable terms and conditions of employment. For example, Bailey did not notify Deville of changes to his department and direct reports, went out of her way to criticize his work performance, and excluded him from meetings with the other director and a consulting group.

On May 10, 2016, Bailey issued Deville a verbal warning regarding his work performance, but she was vague and failed to give specific examples of problematic performance. On May 18, Bailey issued Deville a written "probationary warning" letter, stating that continued performance issues could result in termination of his employment. The written warning contained no specific examples of problematic performance. Instead, it identified duties contained in Deville's job description and alleged that he had not "demonstrated the ability to perform" these duties during the eight days since Bailey's verbal warning.

Deville did not have an opportunity to address Bailey's concerns. The next day, on May 19, Deville experienced symptoms similar to those that he experienced during his stroke, causing him to take a second medical leave until May 31, 2016. He returned to work on June 1. M.D. Anderson terminated Deville's employment on June 3, 2016.

Deville sued M.D. Anderson for disability discrimination in violation of the TCHRA.[1] *See* TEX. LAB. CODE § 21.051. M.D. Anderson filed an answer and a plea to the jurisdiction. M.D. Anderson asserted that it was entitled to sovereign immunity because Deville had not alleged facts supporting the final element of a prima facie disability discrimination claim—i.e., that he was treated less favorably than non-disabled employees or that he was replaced by a non-disabled employee. M.D. Anderson did not challenge the allegations that Deville was disabled or regarded as disabled. Nor did M.D. Anderson contest any of the jurisdictional allegations in Deville's petition.[2] Deville responded to M.D. Anderson's plea by

---

[1]   Deville also asserted claims for retaliation and discrimination for failure to provide reasonable accommodations under the TCHRA, *see* TEX. LAB. CODE §§ 21.055, 21.128(a), but he "argues only his disability discrimination claim in this appeal."

[2]   M.D. Anderson attached an affidavit from Bailey to its plea but did not rely on the affidavit or other evidence in challenging Deville's discrimination claim. Bailey's affidavit summarized the sequence of events of Deville's hiring through his termination, stated that Deville "was not meeting [Bailey's] expectations" for his position despite her "feedback, coaching, and reminders regarding his performance and [her] expectations," and stated that it was Bailey's decision to terminate Deville's employment.

arguing that he had sufficiently "alleged that he was treated less favorably and subjected to different terms and conditions than non-disabled employees." Deville also amended his petition to add new factual allegations.

In its reply, M.D. Anderson argued for the first time that "Deville must identify a comparator" by name to whom he could compare his treatment and that the comparator could not be himself. M.D. Anderson contended that Deville's pleadings relied solely on himself as a comparator and that his "[f]ailure to allege that he was treated less favorably than non-disabled employees or that he was replaced by non-disabled employees is fatal to his prima facie case."

On December 7, 2017, the trial court heard oral argument on M.D. Anderson's plea. M.D. Anderson maintained that Deville had the burden to identify a comparator who was treated more favorably than he was treated, but he had only identified himself as a comparator, which was insufficient as a matter of law. Deville acknowledged that he pleaded "that there's a comparator" and that he "was treated less favorably than non-disabled employees," but he contended that, prior to conducting discovery, "there's no way to know the specific people that would qualify as comparators." He further contended that he could plead himself as his own comparator by alleging that "he was treated less favorably after he was perceived or actually had a disability than he was before" the disability.

5

After waiting more than a year for a ruling on its plea, M.D. Anderson filed a petition for writ of mandamus in this Court seeking to compel the trial court to rule on its plea to the jurisdiction, and the Court conditionally granted the writ. *See generally In re Univ. of Tex. MD Anderson Cancer Ctr.*, No. 01-19-00201-CV, 2019 WL 3418567 (Tex. App.—Houston [1st Dist.] July 30, 2019, orig. proceeding). The trial court then signed an order granting M.D. Anderson's plea to the jurisdiction and dismissing Deville's claims with prejudice. This appeal followed.

**Plea to the Jurisdiction**

In his sole issue with multiple subparts, Deville contends that the trial court erroneously dismissed his TCHRA disability discrimination claim. He argues that he had no obligation to plead a prima facie case of discrimination because the prima facie requirement is an evidentiary standard, not a pleading standard. Nonetheless, Deville argues that he did plead a prima facie case of discrimination by alleging facts demonstrating that M.D. Anderson treated him less favorably shortly after he became disabled (or regarded as disabled).

M.D. Anderson argues that Deville could not plead a prima facie case of discrimination without naming a comparator employee who was treated less favorably than Deville was treated. According to M.D. Anderson, Deville cannot satisfy the prima facie case requirement by contrasting M.D. Anderson's treatment

of Deville before his hemorrhagic stroke with M.D. Anderson's treatment of him after his stroke.

## A.    Standard of Review

It is undisputed that M.D. Anderson, as a governmental entity, enjoys sovereign or governmental immunity from suit unless the Legislature has waived its immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *see also Bansal v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 502 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). When the Legislature has not waived a governmental entity's immunity, trial courts lack subject matter-jurisdiction over claims against the entity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).

A governmental entity can raise its immunity from suit in a plea to the jurisdiction, and we review de novo the trial court's ruling on the plea. *Alamo Heights*, 544 S.W.3d at 770; *Miranda*, 133 S.W.3d at 228. A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights*, 544 S.W.3d at 770. When, as here, a plea challenges only the pleadings, "we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Id.* We "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Harris Cty. v. Annab*, 547 S.W.3d 609, 612–13 (Tex. 2018)

7

(quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

**B.     The TCHRA and Its Impact on Sovereign Immunity**

The TCHRA prohibits employers from discriminating against individuals "because of" disability. TEX. LAB. CODE § 21.051. Specifically, the TCHRA prohibits an employer, because of disability, from "discharg[ing] an individual" or "discriminat[ing] in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id.* § 21.051(1). This prohibition "applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." *Id.* § 21.105. The TCHRA waives a governmental employer's immunity for TCHRA claims asserted against the employer, "but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights*, 544 S.W.3d at 770.

In discrimination cases under the TCHRA, "Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII" of the Civil Rights Act of 1964. *Id.* at 781. Because the TCHRA was enacted to "provide for the execution of the policies embodied in Title 1 of the Americans with Disabilities Act of 1990 and its subsequent amendments" ("ADA"), we look to federal case law construing provisions of the ADA for guidance in construing the

8

TCHRA. TEX. LAB. CODE § 21.001(3) (citing 42 U.S.C. §§ 12101–213); *see* 42 U.S.C. § 12112(a) (prohibiting discrimination "against a qualified individual on the basis of disability in regard to" the "discharge of employees" and "other terms, conditions, and privileges of employment").

As in federal disability discrimination cases, a plaintiff may prove a TCHRA violation by either direct or circumstantial evidence. *Alamo Heights*, 544 S.W.3d at 781–82. "Because smoking guns are hard to come by, the three-part *McDonnell Douglas* burden shifting framework enables an employee to establish discrimination with circumstantial evidence." *Id.* at 782. This burden-shifting framework was propounded in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and was later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the framework, the employee bears the initial burden to establish a prima facie case of discrimination by pleading the basic facts that make up the elements of the claim. *Mission Consol.*, 372 S.W.3d at 634, 637. If the employee meets this "minimal" initial burden, he is entitled to a presumption of discrimination that, if unrebutted, will suffice to support a finding of liability. *Id.* at 634. Once the employee establishes a prima facie case of discrimination, the burden shifts to the employer to negate or rebut the plaintiff's prima facie case, which generally requires evidence articulating "some legitimate, nondiscriminatory reason" for the

employment decision. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802); *see Alamo Heights*, 544 S.W.3d at 782.

## C.    Analysis

M.D. Anderson's plea to the jurisdiction argued that Deville's undisputed factual allegations were legally insufficient to establish the trial court's subject-matter jurisdiction over his disability discrimination claim. *See Alamo Heights*, 544 S.W.3d at 770 (stating that plea may challenge jurisdiction on pleadings alone, on existence of jurisdictional facts, or both). M.D. Anderson attached evidence to its plea, but it did not rely on this evidence to challenge the existence of Deville's jurisdictional allegations regarding his discrimination claim. Nor does M.D. Anderson argue on appeal that its evidence negated Deville's allegations. Because M.D. Anderson solely challenged Deville's pleadings, we need only determine whether Deville's undisputed allegations affirmatively demonstrate subject-matter jurisdiction. *Id.* at 770, 783.

### 1.    Deville's burden to plead facts affirmatively demonstrating subject-matter jurisdiction

Deville first argues that he was not required to plead a prima facie case of discrimination to trigger the Legislature's waiver of M.D. Anderson's sovereign immunity under the TCHRA. This argument is foreclosed many times over.

The Texas Supreme Court has held that the TCHRA waives a governmental employer's immunity for TCHRA claims asserted against the employer, "but only

10

when the plaintiff states a claim for conduct that actually violates the statute." *Id.* at 770. It is well settled that "when the Legislature conditions an immunity waiver on the existence of a statutory violation, the elements of the violation are jurisdictional facts." *Id.* at 784.

Consequently, "a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation" and, thus, waived the governmental employer's immunity. *Mission Consol.*, 372 S.W.3d at 637. When a plaintiff proceeds along the *McDonnell Douglas* burden-shifting framework, "the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA" against a governmental employer. *Id.* The Texas Supreme Court did not mince words about the consequences of a plaintiff's failure to demonstrate a prima facie case: the plaintiff "never gets the presumption of discrimination and never proves his claim." *Id.* That "failure also means the court has no jurisdiction and the claim should be dismissed."[3] *Id.*

---

[3] Notably, this jurisdictional showing does not require evidentiary support or implicate the last two steps of the *McDonnell Douglas* burden-shifting evidentiary framework unless the employer presents evidence negating one of those basic facts pleaded by the plaintiff. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770, 783 (Tex. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637–38 (Tex. 2012).

11

Deville does not analyze any of these cases. Instead, he invokes the United States Supreme Court's statement in *Swierkiewicz v. Sorema N.A.* that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *See* 534 U.S. 506, 510 (2002). In *Mission Consolidated Independent School District v. Garcia*, the Texas Supreme Court explained why a plaintiff nevertheless must plead a prima facie case when asserting a TCHRA claim against an entity with sovereign or governmental immunity:

> Chapter 21 of the Labor Code waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA. The section waiving immunity from suit, Section 21.254, provides that after satisfying certain administrative requirements, "the *complainant* may bring a civil action." A "complainant" is defined in the TCHRA as "an individual who brings an action or proceeding *under this chapter*." Thus, . . . it necessarily follows that a plaintiff must actually "bring[] an action or proceeding under this chapter" in order to have the right to sue otherwise immune governmental employers.

372 S.W.3d at 637 (internal citations omitted).

To give effect to this statutory text, the plaintiff "must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation . . . ." *Id.* This inquiry "is necessary because if TCHRA plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would be practically eliminated." *Id.* at 638.

Thus, we conclude that Deville was required to plead facts establishing a prima facie case of disability discrimination in order to demonstrate the trial court's subject-matter jurisdiction over his discrimination claim against M.D. Anderson.

### 2. Deville's prima facie discrimination claim

Deville argues in the alternative that he satisfied his burden to plead a prima facie case of discrimination. M.D. Anderson responds that Deville could not carry his burden of alleging a prima facie case of disability discrimination without pleading that he was treated less favorably than non-disabled employees or that he was replaced by non-disabled employees. According to M.D. Anderson, Deville could not satisfy his pleading burden by alleging that his supervisor treated him less favorably after he returned to work following his stroke than he was treated before he became disabled. Rather, M.D. Anderson contends that Deville was required to identify a specific employee comparator in his pleadings.

Initially, M.D. Anderson assumes that a prima facie discrimination showing always has four elements: (1) the plaintiff is disabled or regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *See Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 434 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). But "[c]ourts have recognized the flexibility inherent in the *McDonnell Douglas* formula

13

and that the precise elements of a prima facie case will vary depending on the circumstances." *Id.* at 436. The "precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz*, 534 U.S. at 512 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

The fourth element—that a plaintiff was treated less favorably than or replaced by a non-disabled employee—is not universal. *In E.E.O.C. v. LHC Group, Inc.*, the Fifth Circuit declined to require such pleadings or proof in an ADA disability termination case. 773 F.3d 688, 695–97 (5th Cir. 2014) (stating that requiring employees to prove termination was because of disability and to prove disfavored treatment requires employees to prove causation twice, which is inconsistent with *McDonnell Douglas* and underlying purpose of anti-discrimination legislation—"namely, to remove 'artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification'") (quoting *McDonnell Douglas*, 411 U.S. at 801). The court stated that the "requirement that a plaintiff prove she was replaced by or treated less favorably than non-disabled employees was likely imported from *McDonnell Douglas*—a case focused on discriminatory hiring, not termination." *Id.* at 695. The court explained:

> In the *McDonnell Douglas* context, where the employer and the applicant have only a handful of interactions before the allegedly

14

discriminatory hiring decision is made, the subsequent history of the open position is highly relevant to a finding of discrimination. By contrast, where termination is at issue, plaintiffs may draw on their employment history to prove a nexus between their protected trait and their termination. Therefore, rather than articulating the standard for a prima facie discriminatory-discharge claim, the [requirement that a plaintiff prove she was replaced by or treated less favorably than non-disabled employees] is best understood as providing one possible way to prove nexus between the employee's disability and her termination.

*Id.* at 696.

The court went on to hold that a plaintiff could establish a prima facie case of disability discrimination simply by proving that (1) she has a disability; (2) she is qualified for the job she held; and (3) she was "subject to an adverse employment decision on account of her disability." *Id.* at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). In so holding, the court noted that "the other circuits have overwhelmingly required plaintiffs to prove their termination was because of their disability rather than provide evidence of disfavored treatment or replacement." *Id.* at 696 (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014), *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014), *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014), *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013), *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 87 (1st Cir. 2012), and *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012)).

Applying these authorities, we conclude that Deville was not required to identify a non-disabled employee who was treated more favorably than he was treated in order to plead a prima facie case. *Cf. Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003) (holding that, under federal Age Discrimination in Employment Act, "[t]reating younger workers more favorably is not the only way to prove age discrimination"). Instead, Deville pleaded an amalgam of other facts—particularly the suspicious timing of his disciplinary write-up and termination—that can give rise to an inference of discrimination when taken together. *See Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 692 (W.D. Tex. 2019) ("Cruz has introduced countervailing evidence that she was in fact fired on account of her disability. First, there is the timing.") (internal citations omitted).

Here, less than two months elapsed between the time that Deville returned to work following his medical leave from a stroke and Bailey's first verbal warning to him. Deville was then given less than a week to course correct before Bailey issued him a written warning threatening termination of his employment, in part based on his failure to demonstrate an "ability to perform" duties contained in his job description in the mere eight days since her verbal warning. Deville was then terminated only two days after his second medical leave. All told, Deville was fired less than three months after returning to work from his first leave. All the while, he was no longer permitted to attend meetings with Bailey and the other director and

16

consultants when he was in the office, he was not notified of changes to his department, and his work performance was criticized.

M.D. Anderson has not put forth evidence disputing Deville's allegations, so we must take them as true. His allegations raise a permissible inference of discrimination. In cases where an employee becomes disabled or regarded as disabled after hiring, courts have credited evidence that an employer suddenly started treating the employee less favorably than before the disability came to light.[4] *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 623–24 (5th Cir. 2009) (stating that jury could reasonably find that management immediately reacted to announcement of employee's disability recurrence and need for medical leave by looking for reasons to fire her because of her disability, accommodation request, or both); *Cruz*, 405 F. Supp. 3d at 693 ("If her disability had nothing to do with her termination, why was she fired two months after returning to work full-time despite never being formally reprimanded in 18 months before her injury?"); *Donaldson v. Trae-Fuels, LLC*, No. 3:18CV00097, 2019 WL 6646735, at *9, 11 (W.D. Va. Dec. 5, 2019) (crediting proof

---

[4]    Courts have largely conducted this analysis without referring to the plaintiff as his own comparator. By describing Deville's allegations as "alleging oneself as one's comparator," M.D. Anderson attempts to fit a square peg into a round doctrinal hole. For the reasons that the Fifth Circuit gave in *E.E.O.C. v. LHC Group, Inc.*, Deville can make his prima facie case using proof of his disparate treatment before and after the discovery of his disability. *See* 773 F.3d 688, 695–97 (5th Cir. 2014). Using a comparator is just one option for proving a disability discrimination claim, and Deville need not utilize it. This conceptual mismatch likely explains the alleged "rarity" of the argument that a plaintiff can use himself as his own comparator.

17

that plaintiff "was terminated three months after he was diagnosed with pancreatic cancer and one month after he began chemotherapy"); *Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F. Supp. 2d 643, 653 (S.D. Tex. 2011) (denying summary judgment in part based on "temporal coincidence" of firing employee three days after employee disclosed his tumor to employer); *Schrack v. R+L Carriers, Inc.*, No. 1:10cv603, 2012 WL 2309365, at *13 (S.D. Ohio June 18, 2012) (concluding that "close temporal proximity" between employee's initial termination immediately after employer first learned of disability and second termination after attempting to return from medical leave when symptoms were under control as well as evidence suggesting that employee's medical condition played role in termination decision sufficed to establish prima facie case). Here, the brief window between Deville's return from medical leave and his termination makes this case similar to *Cruz v. R2Sonic, LLC* and *Donaldson v. Trae-Fuels, LLC*.

M.D. Anderson cites no Texas precedent to the contrary.[5] In a previous case to which M.D. Anderson was also a party, this Court held that M.D. Anderson retained sovereign immunity from a nurse's age-discrimination suit. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. Valdizan-Garcia*, No. 01-12-00386-CV, 2012 WL 5545783,

---

[5] Both parties cite to *Hart v. City of Austin*, No. 03-99-00216-CV, 2000 WL 1228633 (Tex. App.—Austin Aug. 31, 2000, no pet.) (mem. op, not designated for publication). *Hart* is an unpublished opinion that predates January 1, 2003, and thus has no precedential value. *See* TEX. R. APP. P. 47.7(b).

18

at *5 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op.). There, we found that the plaintiff could not "establish a prima facie case of discrimination without evidence, or even an allegation, that younger nurses were disciplined differently for deficient patient care." *Id.* But in that case, the nurse's discrimination claims were based solely on her own subjective beliefs. *Id.* at *4–5. The nurse did not allege that her employer discovered her age only after she had been hired and promptly terminated her thereafter.

M.D. Anderson also invokes *Texas Department of Aging & Disability Services v. Loya*, which held that an employee had not produced any evidence that she was treated less favorably than similarly situated males. 491 S.W.3d 920, 925 (Tex. App.—El Paso 2016, no pet.). But that was not the end of the matter. The court went on to consider whether other alleged facts could raise a "reasonable inference" of gender-based discrimination, found the remaining allegations lacking in probative value, and reversed the trial court's order denying the Department's plea to the jurisdiction. *Id.* The court did not cut off every avenue to a prima facie case except a comparator.

*Jespersen v. Sweetwater Ranch Apartments* is distinguishable as well. *See* 390 S.W.3d 644 (Tex. App.—Dallas 2012, no pet.). There, the court considered Jespersen's claim that her employer discriminated against her based on pregnancy by replacing her with a non-pregnant woman. *Id.* at 648–51, 654–55. Jespersen did not

argue that she was treated differently after becoming pregnant than before becoming pregnant, and the court did not mention the issue. *See id.* at 654–55. The court stated only that she did not "produce any evidence that she was replaced by someone outside of her protected class or others similarly situated were treated more favorably" than she was treated. *Id.* at 655. The court also found that, even if Jespersen had established a prima facie case, her employer had articulated legitimate, non-discriminatory reasons for not reinstating her employment. *Id.*

Here, Deville alleged what Jespersen did not: that he was treated less favorably after becoming disabled than he had been treated before becoming disabled. Moreover, because M.D. Anderson did not rely on evidence supporting its jurisdictional challenge and did not articulate a legitimate, non-discriminatory reason for terminating Deville, the burden never switched to Deville to produce any evidence proving his less favorable treatment. *See Alamo Heights*, 544 S.W.3d at 783.

In sum, we reaffirm that the elements of a prima facie discrimination claim are flexible, not a body cast. Deville's allegations of his less favorable treatment upon his return to work and his termination shortly thereafter are sufficient to raise a presumption of disability-based discrimination. Construing the pleadings in Deville's favor and looking to his intent in pleading, as we must, we conclude that Deville has alleged basic facts allowing an inference that he was subjected to an adverse

employment decision because of his disability. *See Annab*, 547 S.W.3d at 612–13;

*Alamo Heights*, 544 S.W.3d at 770. We sustain Deville's issue.

## Conclusion

We reverse and remand for further proceedings consistent with this opinion.

April L. Farris
Justice

Panel consists of Justices Kelly, Guerra, and Farris.