Opinion issued May 25, 2023



**In The**

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-22-00453-CV**

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**EVERNECCA CARTER, Appellee**

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-02734**

**MEMORANDUM OPINION**

In this interlocutory appeal, the City of Houston argues the trial court should

have granted its plea to the jurisdiction. The City argues that Evernecca Carter, an

employee who sued the City for sexual harassment and retaliation, failed to establish

a waiver of the City's governmental immunity. Because we ultimately agree with

the City, we reverse the trial court's order denying the plea and dismiss Carter's claims for lack of jurisdiction.

## BACKGROUND

Carter started working for the City's Solid Waste Management Department in June of 2018. The City hired her as a senior sideloader operator, which entails driving a sideloading garbage truck, though she first had to undergo training by working on a rearloader truck.

By August, Shawn Johnson, Carter's supervisor, started sending Carter inappropriate text messages. The text messages included comments such as:

- "You are so sexxy [sic]";

- "I love hearing your voice over the radio, say something; anything";

- "You are simply beautiful, gorgeous and so sexxy [sic]; [I] can't help but compliment you. I love looking at you";

- "I almost want to use profanity, [I] really think that you are so beautiful";

- "I want your eyes on me and a whole lot more[,] sexxy [sic]";

- "I want you . . . [i]n every way possible";

- "I don't want to have sex with you, [I] want to make love and be in a relationship with you"; and

- "I want you so bad."

Johnson continued to send these text messages for months. In December, Johnson called Carter into his office while everyone else was in a meeting, and he grabbed her and tried to kiss her. Carter told him to stop and immediately left the office.

Carter filed a charge alleging sex discrimination with the Equal Employment Opportunity Commission (EEOC) in January of 2019. In February, she reported Johnson's conduct to the City's Office of Inspector General (OIG), a division of the City Attorney's office responsible for investigating employee misconduct. The City issued Johnson an order stating he was not to contact Carter, and he complied. The OIG investigated Carter's complaint against Johnson and ultimately sustained it.

Immediately after Carter reported Johnson's conduct to the OIG, she was transferred to a different facility that Johnson did not supervise, the Judiway facility, but she continued working as a sideloader operator. A City human resources representative explained that Carter was transferred because of the City's policy to separate employees who are the subject of an investigation.

Carter claims that as soon as she began working at the Judiway facility, her new supervisor, Michael Fair, told her coworkers in a meeting that Carter had a pending sexual-harassment complaint so they should not talk to her. She claims her coworkers then badgered her, gossiped about her, and ostracized her. She had to work mandatory overtime, up to 70 or 80 hours a week, for six or seven days a week, sometimes in 16- to 20-hour shifts. When she complained about the mandatory

3

overtime, her supervisor told her, "Mandatory is mandatory," and, "You either are going to do the job or you are going to quit." Carter also asserts that, because of the long hours, she developed knee problems, and even after submitting a note from her doctor, her supervisors refused to submit a workers' compensation claim for her. Additionally, Johnson refused to submit her payroll after she transferred, though Carter reached out to another supervisor and the issue was resolved.

After Carter received her right-to-sue notice from the EEOC, she filed this lawsuit against the City, alleging sexual harassment, retaliation, and workers' compensation retaliation. The City filed a combined plea to the jurisdiction and motion for summary judgment, claiming governmental immunity. The trial court granted the City's combined plea and motion as to the workers' compensation retaliation claim[1] but denied it as to the sexual harassment and retaliation claims. The City now appeals.

## DISCUSSION

The City argues that Carter did not exhaust her administrative remedies as to her retaliation claim, which is a jurisdictional bar to suit, and that she did not raise a fact issue as to her retaliation claim or make a prima facie case of sexual harassment, which are also jurisdictional bars.

---

[1] Neither party has challenged the trial court's ruling on the workers' compensation retaliation claim, so it is not part of this appeal.

*Governmental Immunity*

The City is a governmental entity and therefore has immunity from suit unless the legislature waives that immunity. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 & n.5 (Tex. 2011). A governmental entity may assert its immunity through a plea to the jurisdiction because immunity from suit implicates a trial court's jurisdiction. *Id.* at 133.

The Texas Commission on Human Rights Act (TCHRA), Chapter 21 of the Texas Labor Code, waives immunity from suit for a governmental employer that violates the TCHRA's anti-discrimination statutes. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018); *see* TEX. LAB. CODE §§ 21.001–.556. The TCHRA prohibits an employer from discriminating on the basis of race, color, disability, religion, sex, national origin, or age and prohibits retaliation against an employee for opposing or reporting a discriminatory practice. TEX. LAB. CODE §§ 21.051, 21.055. The TCHRA, however, only waives governmental immunity for suits in which a plaintiff alleges sufficient facts to establish a prima facie violation of the Act. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635–36 (Tex. 2012). Thus, whether a plaintiff has established a prima facie case of discrimination against a governmental employer under the TCHRA is a jurisdictional issue. *See id.*; *Clark*, 544 S.W.3d at 770.

*Standard of Review*

We review a trial court's ruling on a plea to the jurisdiction de novo.[2] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Clark*, 544 S.W.3d at 770. When the plea challenges the pleadings, we determine whether the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* When the plea challenges the existence of jurisdictional facts with supporting evidence, the plaintiff must raise "at least a genuine issue of material fact" to avoid dismissal of her claim. *Id.* at 770–71. In determining whether the plaintiff has raised a material fact issue, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* at 771. The standard of review for a plea challenging jurisdictional facts mirrors that of a traditional summary judgment. *Id.*

We have appellate jurisdiction to review an interlocutory order denying a governmental entity's plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE

---

[2] A governmental entity may raise governmental immunity and challenge the trial court's jurisdiction through a plea to the jurisdiction or a motion for summary judgment. *Clark*, 544 S.W.3d at 770. Because the City raised only jurisdictional issues in its combined plea to the jurisdiction and summary-judgment motion, we treat the entire motion as a plea to the jurisdiction. *See Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 390 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

§ 51.014(a)(8); *see, e.g.*, *City of Houston v. Guthrie*, 332 S.W.3d 578, 586 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

*New Arguments*

Carter argues that the City has raised several new issues for the first time on appeal, including:

- Carter failed to exhaust her administrative remedies because certain events occurred after she filed the EEOC charge;
- Carter did not establish constructive discharge;
- Carter failed to establish a causal link between her discrimination complaint and a material adverse employment action; and
- the City was not liable based on the *Faragher/Ellerth* defense.

Ordinarily a party may not raise new issues for the first time on appeal, but there is an exception for issues demonstrating the trial court lacked subject-matter jurisdiction. *See City of Webster v. Hunnicutt*, 650 S.W.3d 792, 798 n.6 (Tex. App.—Houston [14th Dist.] 2022, pet. filed); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal[.]"). Because the City is a governmental entity, whether Carter has established a prima facie case against it implicates the trial court's jurisdiction. *See Clark*, 544 S.W.3d at 770; *Garcia*, 372 S.W.3d at 635–36; *see also San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015) (explaining appellate court was obligated to consider new jurisdictional arguments on appeal when governmental entity challenged plaintiff's prima facie case under

7

TCHRA). Further, while we generally may not consider *issues* that were not raised in the trial court, the parties may make new *arguments* in support of issues that were raised below. *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam). The record shows the City raised in its plea to the jurisdiction the issues of Carter's exhaustion of remedies, whether she established a prima facie case of retaliation or rebutted the City's proffered reason for her transfer, and whether she established a prima facie case of sexual harassment, and these are the issues the City raises on appeal. Further, other than the constructive-discharge question, which the parties substantively argued in the trial court, we either resolve in Carter's favor or do not reach the remaining new arguments.

## Exhaustion of Administrative Remedies

In its first issue, the City argues Carter failed to exhaust her administrative remedies for her retaliation claim because the charge she filed with the EEOC did not mention the City's alleged retaliation against her.

### 1. *Applicable Law*

To file a suit for employment discrimination, a plaintiff must first exhaust her administrative remedies. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). Exhausting administrative remedies is a jurisdictional prerequisite to suit against a governmental employer, and failing to do so deprives the trial court of jurisdiction. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513–14 (Tex.

8

2012). A plaintiff exhausts her administrative remedies after she timely files a charge of discrimination with either the Texas Workforce Commission (TWC) or the federal EEOC and receives a right-to-sue notice from either agency. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002);[3] *Harris Ctr. for Mental Health & IDD v. McLeod*, No. 01-20-00838-CV, 2022 WL 1632173, at *4 (Tex. App.—Houston [1st Dist.] May 24, 2022, no pet.) (mem. op.); *see also* TEX. LAB. CODE §§ 21.201, 21.202, 21.208, 21.252, 21.254. The plaintiff may then sue her employer, but, generally, the plaintiff's claims in the civil suit are limited to the claims that were included in the TWC or EEOC charge and factually related claims that "could reasonably be expected to grow out of" the claims stated in the charge. *Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 401 (Tex. App.—El Paso 2018, no pet.).

The Fifth Circuit has acknowledged an exception to the exhaustion-of-remedies requirement for a claim alleging retaliation for filing a discrimination charge with the TWC or EEOC. *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981). Recognizing that a claim for retaliation for filing a charge necessarily arises after the plaintiff files the charge, the Fifth Circuit held a

---

[3] One of the purposes of the TCHRA is to execute the policy goals of Title VII of the federal Civil Rights Act of 1964, so we may use federal statutes and cases interpreting them to guide our interpretations of the TCHRA. *Garcia*, 372 S.W.3d at 633–34 (citing TEX. LAB. CODE § 21.001(1)).

plaintiff does not have to file a separate charge for retaliation to exhaust her administrative remedies because the trial court has jurisdiction over a claim like retaliation that "grows out of" a charge that is properly before the court. *Id.*

### 2. *Analysis*

The City argues Carter failed to exhaust her administrative remedies for her retaliation claim against the City. Her EEOC charge, the City argues, describes only discrimination and retaliation by Johnson, not the City, but Carter pleaded retaliation against the City in her civil suit. The City argues that a claim of retaliation by the City does not automatically grow out of the claims of discrimination and retaliation by Johnson.

We disagree. Carter's charge-retaliation claim falls squarely within the *Gupta* exception. Carter alleged the City retaliated against her for filing the EEOC charge. Thus, her retaliation claim grew out of her EEOC charge. *See id. Gupta* does not hold that the discriminatory practice in the charge and the charge-retaliation must be committed by the same person, nor has the City identified any case establishing such a requirement, and there is contrary precedent. *See Rodriquez v. Midland Cnty. Hosp. Dist.*, No. MO:18-CV-173-DC, 2021 WL 3590695, at *1–3, *6 (W.D. Tex. Jan. 24, 2021) (concluding plaintiff exhausted administrative remedy for retaliation claim under *Gupta* exception because retaliation claim grew out of discrimination

10

charge, even though plaintiff alleged discrimination by coworker and retaliation by employer). Carter exhausted her administrative remedies as to her retaliation claim.

The City argues that the Fourteenth Court, when faced with similar facts, dismissed the plaintiff's retaliation claims, citing *Texas Department of Transportation v. Esters*, 343 S.W.3d 226 (Tex. App.—Houston [14th Dist.] 2011, no pet.). But *Esters* does not support the City's position. In *Esters*, the plaintiff filed a charge of race discrimination with the TWC and the EEOC. *Id.* at 228. After the EEOC concluded its investigation and issued a right-to-sue notice, the plaintiff filed a second charge of race discrimination, attempting to amend his prior charge. *Id.* at 228–29. In this second charge, he alleged (1) race discrimination; (2) retaliation for complaining internally about discriminatory practices; and (3) retaliation for filing the first charge with the EEOC. *Id.* at 229. The EEOC took no action regarding this second charge and did not issue a second right-to-sue notice. *Id.* The Fourteenth Court concluded the plaintiff exhausted his administrative remedies for his third claim, retaliation for filing the first charge with the EEOC, but he did not exhaust his administrative remedies for his second claim, retaliation for complaining internally about discriminatory practices, because that claim was not factually related to the first charge and could not be reasonably expected to grow out of the first charge. *Id.* at 230–31. The court acknowledged and applied the *Gupta* exception for the plaintiff's retaliation claim based on filing a charge with the EEOC. *Id.* Thus,

11

*Esters* supports our conclusion that a retaliation claim for filing an EEOC charge grows out of the original charge. *See id.*

The City also argues that Carter failed to exhaust her administrative remedies for her retaliation claim because in her later charge filed with the TWC, she did not allege retaliation. For reasons not explained in the record, Carter filed a second charge of discrimination with the TWC in March of 2019, two months after she filed the EEOC charge. This charge is factually similar to the EEOC charge, alleging sexual harassment by Johnson. There is no indication that the TWC took any administrative action regarding this charge or issued a right-to-sue notice for this charge.

The City argues that Carter failed to exhaust her administrative remedies for her retaliation claim because Carter filed this TWC charge after the City's alleged retaliation occurred, yet she did not allege retaliation in this charge. However, Carter's suit is based on her EEOC charge. She initially filed her sexual-harassment charge with the EEOC, the EEOC pursued an administrative investigation of her charge, the EEOC issued a right-to-sue notice, and then Carter filed her civil suit. We have already concluded that Carter exhausted her administrative remedies by filing her EEOC charge. After filing her EEOC charge, Carter inexplicably filed a

12

second charge with the TWC,[4] but we fail to see why this duplicative charge has any bearing on her suit. *See id.* at 230 (disregarding second filed charge, for which EEOC or TWC took no administrative action, when plaintiff's original charge exhausted administrative remedies).

Carter's retaliation claim grew out of her original discrimination charge, and she has exhausted her administrative remedies for her retaliation claim. *See Gupta*, 654 F.2d at 414; *Taylor*, 296 F.3d at 379; *McLeod*, 2022 WL 1632173, at *4. We overrule the City's first issue.

## Retaliation

The City next argues the trial court erred in denying its plea to the jurisdiction because Carter failed to establish a prima facie retaliation claim, and even if she did, the City offered a legitimate, nondiscriminatory reason for transferring Carter and she did not rebut that reason.

### 1. *Applicable Law*

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities, like reporting sexual harassment. TEX. LAB. CODE § 21.055; *Clark*, 544 S.W.3d at 781.

---

[4]    A plaintiff may file a discrimination charge with either the EEOC or the TWC, and a charge filed with the EEOC is considered also filed with the TWC because of the agencies' worksharing agreement. *Free v. Granite Publ'ns, L.L.C.*, 555 S.W.3d 376, 377 n.2 (Tex. App.—Austin 2018, no pet.).

To establish a prima facie retaliation claim under the TCHRA, a plaintiff must show: (1) she engaged in a protected activity; (2) she experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Clark*, 544 S.W.3d at 782.

For the first element, a plaintiff engages in a protected activity under the TCHRA when she opposes a discriminatory practice or files a charge of discrimination, among other things. TEX. LAB. CODE § 21.055; *Clark*, 544 S.W.3d at 786. Sexual harassment is a form of sex discrimination prohibited by the TCHRA. *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Filing a charge of sexual harassment, then, is a protected activity. *Clark*, 544 S.W.3d at 781.

For the second element, a material adverse employment action is an employer action that would dissuade a reasonable employee from making a charge of discrimination. *Id.* at 788. Whether an employee suffered a material adverse employment action is a fact-specific inquiry because the significance of a retaliatory act often depends on the particular circumstances and context in which it occurs. *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 442 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). A transfer to a different shift with "drastically and objectively less desirable hours" can be a material adverse employment action. *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019).

14

Constructive discharge can also be a material adverse employment action. *See Microsoft Corp. v. Mercieca*, 502 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). To establish constructive discharge, the plaintiff must show her "employer made working conditions so intolerable that a reasonable person would feel compelled to resign." *Williams*, 313 S.W.3d at 805. Whether a reasonable person would feel compelled to resign is also a fact-specific inquiry, but we may consider whether the plaintiff experienced: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off, whether the offers were accepted or not. *Mercieca*, 502 S.W.3d at 312.

For the third element of a prima facie retaliation claim, a plaintiff must show she would not have experienced the material adverse employment action "but for" her engaging in a protected activity. *Donaldson*, 495 S.W.3d at 441. The employee does not need to establish the protected activity was the sole cause of the adverse employment action, though. *Id.* at 441–42.

A plaintiff may establish a retaliation claim by direct or circumstantial evidence. *Clark*, 544 S.W.3d at 781–82. When a plaintiff relies on circumstantial evidence, as Carter does here, we apply the three-part *McDonnell Douglas* burden-

15

shifting framework. *Id.* at 782 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). First, the plaintiff has the burden to establish a prima facie case of retaliation, and if she does, a rebuttable presumption of retaliation arises. *Id.* The burden then shifts to the employer to rebut the presumption by producing a legitimate, nondiscriminatory reason for the employment action. *Id.* If rebutted, the presumption of retaliation disappears, and the burden shifts back to the employee to establish the employer's stated reason is false and a pretext for discrimination. *Id.*

The employee always bears the burden of persuasion. *Id.* Each stage of the *McDonnell Douglas* framework is relevant to the jurisdictional inquiry in a suit against a governmental employer. *Id.* at 784. A plaintiff must establish a prima facie case, and if the governmental employer offers evidence to negate or rebut the prima facie case, then "the entire *McDonnell Douglas* framework is fully implicated," and a plaintiff must present sufficient evidence of pretext to survive the plea to the jurisdiction. *Id.* at 783. In other words, if the plaintiff fails to meet her burden at any stage, then she has not affirmatively demonstrated an immunity waiver under the TCHRA, and the trial court lacks jurisdiction. *Id.* at 783–84; *see also Garcia*, 372 S.W.3d at 636 ("[T]he [l]egislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder.").

## 2.    *Analysis*

### a.    ***Carter's Prima Facie Case***

Under the *McDonnell Douglas* framework, Carter has the initial burden to establish a prima facie retaliation case. *Clark*, 544 S.W.3d at 782. The City does not dispute the first element of her prima facie case, that she engaged in a protected activity by filing a discrimination charge with the EEOC, but the City challenges whether Carter has established the second and third elements. *See id.* at 781.

*Second Element: Material Adverse Employment Action*

The City disputes the second element of Carter's prima facie retaliation case, that Carter experienced a material adverse employment action.

*(1) Cumulative Actions*

Carter claims that her transfer to the Judiway facility, what she calls the "worst facility," was a material adverse employment action because at the new facility she was required to work a significant amount of overtime—seven days a week with 16- to 20-hour shifts each day, her supervisor Michael Fair violated the OIG's confidentiality policy by telling her coworkers about her pending sexual-harassment complaint, and her coworkers then ostracized her and gossiped about her. Considering the cumulative effect of all of these actions, Carter argues, she experienced a material adverse employment action that would deter a reasonable employee from complaining about sexual harassment.

17

However, in its plea to the jurisdiction, the City challenged Carter's alleged facts. *See id.* at 770–71 (plea to jurisdiction may challenge existence of jurisdictional facts with evidence).

*(a) The City's Challenge*

First, regarding Carter's description of the Judiway facility as the "worst" facility, the City argued this was only her subjective belief, and there are no facts to support that claim.

Second, regarding overtime, the City offered Demarcus Glass's affidavit. Glass is a deputy assistant director of the Solid Waste Management Department and supervises the Judiway facility. Glass stated that when mandatory overtime is required, it is based on the operational needs of the department at the time and is applied uniformly. The City argued that all employees at the Judiway facility were required to work overtime, but the City did not dispute the number of hours or days per week Carter claimed she was required to work.

Third, regarding the confidentiality violation by telling other employees about Carter's sexual-harassment complaint, Michael Fair stated in his affidavit that when Carter transferred to his section, he was not aware that Carter had filed an OIG sexual-harassment complaint. He stated he did not talk to anyone about the complaint.

18

Another deputy assistant director, Jeffrey Williams, stated in an affidavit that, even after her transfer, Carter's job title, job duties, pay rate, and benefits remained the same.

The City challenged with evidence some of Carter's allegations that she suffered a material adverse employment action. Thus, Carter had the burden to raise at least a genuine issue of material fact. *Id.* at 771.

*(b) Carter's Response*

Regarding her first claim, that Judiway was the worst facility, when questioned in her deposition about why Judiway was the worst facility, Carter gave two reasons. She said Judiway was the worst because none of her coworkers there should have known about why she was transferred, but the City disputed that Fair ever told her coworkers why she was transferred. She also said Judiway was the worst because she was working long hours there, seven days a week for 16- to 20-hour shifts. The City did not dispute that Carter was required to work those hours but provided evidence that overtime requirements were uniformly applied. These claims do not establish that the Judiway facility was objectively the worst facility. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (plaintiff's subjective belief, without more, was insufficient to establish that transfer was adverse employment action).

Carter did not offer evidence to challenge Michael Fair's assertion that he never told other employees about her OIG sexual-harassment complaint because he did not know about it. In her deposition, Carter said that as soon as she transferred to the Judiway facility, Fair told everyone not to talk to her because she had a pending sexual-harassment complaint. When asked how she knew this, she said that Fair told the employees in a meeting, but she was not present at that meeting and did not have personal knowledge that this occurred; she learned about it when her coworkers later told her.

Regarding her coworkers' gossip allegedly stemming from their knowledge of her sexual-harassment complaint, Carter did not identify any specific statements or any particular coworkers who made them. She only said her coworkers constantly gossiped about her and that it took a mental toll on her. *See Clark*, 544 S.W.3d at 789 (complaints of ostracism and unfair criticism are "petty annoyances" and not materially adverse employment actions); *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 731 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (ostracism by fellow employees not material adverse employment action that constitutes retaliation).

Generally, we must take all evidence favorable to the plaintiff as true in determining whether a material fact issue exists. *Clark*, 544 S.W.3d at 771. But subjective beliefs and conclusory statements—those that do not provide the

20

underlying facts to support the conclusion or are made without personal knowledge of the matters being testified to—are not competent evidence to raise a fact issue in a plea to the jurisdiction. *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (per curiam) (employee's subjective beliefs are conclusory and not competent evidence); *Wilson v. Dall. Indep. Sch. Dist.*, 376 S.W.3d 319, 326 (Tex. App.—Dallas 2012, no pet.) ("Conclusory statements are not competent evidence in a plea to the jurisdiction proceeding."); *Adams v. Oncor Elec. Delivery Co., L.L.C.*, 385 S.W.3d 678, 683 (Tex. App.—Dallas 2012, no pet.) (employee's testimony that he "heard about" how other employees were treated, without demonstrating personal knowledge, was not competent evidence to raise fact issue); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 511 (Tex. App.—El Paso 2008, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion. A conclusory statement is not sufficient to raise a fact issue." (citation omitted)).

We conclude Carter did not raise a fact issue as to whether she was transferred to the worst facility, whether her supervisor told her coworkers about her sexual-harassment complaint, or whether her coworkers gossiped about her and ostracized her.

But Carter raised a fact issue as to whether she suffered a material adverse employment action by being transferred to a facility where she was required to work

21

long hours. *See Johnson*, 916 F.3d at 420 (transfer to shift with "drastically and objectively less desirable hours" can be material adverse employment action). Having to work 70 to 80 hours a week after complaining about sexual harassment would dissuade a reasonable employee from reporting the conduct. *See Clark*, 544 S.W.3d at 788 (material adverse employment action is one that would dissuade reasonable employee from making charge of discrimination).

*(2) Constructive Discharge*

Carter also argued that she was constructively discharged, which alone can be a material adverse employment action, for the same reasons: she was transferred to the "worst facility," she was required to work a significant amount of overtime, her supervisor Michael Fair violated the OIG's confidentiality policy by telling her coworkers about her pending sexual-harassment complaint, and her coworkers then ostracized her and gossiped about her.

We have already concluded that the City challenged and Carter has not raised a fact issue as to any of these factual allegations except having to work a significant amount of overtime.

Carter has not provided evidence of any of the typical constructive-discharge factors, like whether she experienced: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage

22

the employee's resignation; and (6) offers of early retirement that would make the employee worse off. *See Mercieca*, 502 S.W.3d at 312. The City provided evidence, and Carter did not dispute, that even after her transfer, Carter's job title, job duties, pay rate, and benefits remained the same. Carter has not cited, nor have we found, any authority holding that mandatory overtime—even a significant amount like 80 hours a week—by itself is sufficient to establish constructive discharge. Thus, we conclude Carter has failed to raise a fact issue as to whether she was constructively discharged from the Judiway facility.

In sum, we conclude Carter has established a prima facie case of one material adverse employment action: her transfer to a facility where she was required to work significant overtime hours.

### *Third Element: Causal Link*

The City argues there is no evidence of a causal link between Carter's protected activity—filing a complaint about Johnson's conduct—and the alleged material adverse employment action, but we conclude Carter satisfies this element.

The City provided evidence that Carter was transferred to the Judiway facility *because* she complained about Johnson's conduct. Pamela Jarmon-Wade, the human resources representative for the City's Solid Waste Management Department stated in an affidavit that, after Carter filed her complaint with the OIG, she was transferred to another facility because it was "standard HR practice to always separate

23

employees pending an investigation." Thus, the City's evidence establishes that Carter was transferred because of her complaint about Johnson.

We conclude Carter established a prima facie case of retaliation for filing a sexual-harassment complaint because as a result of filing the complaint, she was transferred to a facility where she was required to work a significant amount of overtime hours, and a presumption of retaliation arises. *See Clark*, 544 S.W.3d at 782. Carter has not established a prima facie case as to any of the other material adverse employment actions she claimed.

### b. Legitimate, Nondiscriminatory Reason

Because Carter established a prima facie case of retaliation, under the *McDonnell Douglas* framework, the burden shifts to the City to rebut the presumption of retaliation by producing a legitimate, nondiscriminatory reason for the employment action. *See id.*

We conclude the City met its burden. The City provided the affidavit of Pamela Jarmon-Wade, the human resources representative for the City's Solid Waste Management Department, who stated Carter was transferred to another facility because it was "standard HR practice to always separate employees pending an investigation." The City did not dispute that Carter was required to work overtime at the Judiway facility, but provided the affidavit of Demarcus Glass, a supervisor of the Judiway facility, who stated that when mandatory overtime is required, it is

24

based on the operational needs of the department at the time and is applied uniformly. The City provided a legitimate, nondiscriminatory reason for Carter's transfer and overtime hours; thus, the presumption of retaliation disappears. *See id.*

### c.     *Evidence of Pretext*

In the last step of the *McDonnell Douglas* framework, after Carter established a prima facie case of retaliation and the City provided a legitimate, nondiscriminatory reason for transferring her and requiring her to work overtime, the burden shifts back to Carter to provide some evidence, enough to raise a fact issue, that the City's stated reason is false and a pretext for discrimination. *See id.*

Carter has not offered any evidence that the City's stated HR policy or the mandatory overtime requirements were false or pretextual. Thus, she has failed to meet her burden at this final stage of the *McDonnell Douglas* framework. *See id.*

Each stage of the *McDonnell Douglas* framework is jurisdictional. *Id.* at 783–84. Because Carter has failed to meet her burden at this stage, she has not alleged facts to establish an immunity waiver under the TCHRA. *Id.* Therefore, the trial court erred in denying the City's plea to the jurisdiction as to Carter's retaliation claim. We sustain the City's second issue.

### Hostile-Work-Environment Sexual Harassment

Lastly, the City argues Carter failed to establish a prima facie sexual-harassment claim.

### 1. *Applicable Law*

The TCHRA prohibits discrimination on the basis of sex, among other factors. TEX. LAB. CODE § 21.051. Sexual harassment is a form of sex discrimination prohibited by the TCHRA. *Zeltwanger*, 144 S.W.3d at 445. Sexual harassment includes "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Clark*, 544 S.W.3d at 807 (quoting 29 C.F.R. § 1604.11(a)).

There are generally two types of sexual harassment: quid pro quo and hostile work environment. *Williams*, 313 S.W.3d at 804. Here, Carter alleges hostile-work-environment sexual harassment.

To establish a prima facie case of hostile-work-environment sexual harassment, a plaintiff must show: (1) she was subjected to unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive as to alter the terms or conditions of employment and create a hostile work environment; and (4) some basis for holding the employer liable. *Clark*, 544 S.W.3d at 771. When a plaintiff complains of sexual harassment by a supervisor, she does not need to establish the fourth element. *See Donaldson*, 495 S.W.3d at 445 (citing *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.— Houston [1st Dist.] 2015, no pet.)).

For the third element, altering a term or condition of employment, the severe and extreme nature of the harassment itself is what constructively alters the plaintiff's terms and conditions of employment. *Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163,187–88 (Tex. App.—El Paso 2021, no pet.). Only when a workplace is "permeated with discriminatory intimidation, ridicule, and insult" is the harassment sufficiently severe and pervasive to create a hostile and abusive work environment. *Coleman v. Kijakazi*, No. 21-10399, 2023 WL 2660167, at *2 (5th Cir. Mar. 28, 2023) (per curiam). The harassment must be more than rude or offensive comments, teasing, or isolated incidents; it must be "so severe and pervasive that it destroys [the plaintiff's] opportunity to succeed in the workplace." *Hockman v. Westward Comms., LLC*, 407 F.3d 317, 326 (5th Cir. 2004) (quoting *Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999)). The abusiveness standard requires "extreme" conduct. *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 219 (Tex. App.—Austin 2010, no pet.). This is a heavy burden. *Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 925 (Tex. App.—El Paso 2016, no pet.).

To establish a hostile work environment, a plaintiff must show the environment was both objectively and subjectively offensive—"one that a reasonable person would find hostile or abusive and one that the [plaintiff] perceived to be so." *Donaldson*, 495 S.W.3d at 445. We consider the totality of the

27

circumstances, including frequency and severity of the conduct, whether the conduct was physically threatening or humiliating rather than a mere offensive utterance, and whether the conduct unreasonably interfered with the plaintiff's work performance. *Id.* We may also consider whether the conduct undermined the plaintiff's workplace competence. *Hockman*, 407 F.3d at 326. The plaintiff does not need to show the conduct caused a "tangible psychological injury," but she most show it was more than "merely offensive." *See Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 713 (Tex. App.—El Paso 2015, no pet.).

Not all offensive and inappropriate conduct is actionable under the TCHRA. In fact, courts often find egregious and offensive behavior insufficiently severe or pervasive to create a hostile work environment. *See, e.g.*, *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 826 (5th Cir. 2009) (per curiam) (coworker walked up to plaintiff until his chest was touching her, stared at her in hostile and intimidating manner, and rubbed his pelvic region across her hips when he squeezed past her); *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (per curiam) (supervisor "grabbed [the plaintiff] on the buttocks and made suggestive comments" while she conversed with another employee); *Hockman,* 407 F.3d at 321–22 (supervisor made sexually suggestive remarks to plaintiff, repeatedly insisted that she be alone with him, remarked on another employee's body, brushed up against plaintiff's breasts and behind, once tried to kiss her, once stood in bathroom doorway while plaintiff

28

was present, and once swatted plaintiff's behind with newspaper); *Shepherd*, 168 F.3d at 872 (coworker touched plaintiff's arm several times, rubbed arm down to her wrist, simulated looking up her dress, tried to look down her clothing, and made sexually suggestive comments that included referring to color of her nipples and size of her thighs); *Staller v. Serv. Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039, at *5 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.) (supervisor made sexually inappropriate remarks, made comments about the size of her breasts, stood over her at her desk and attempted to look down her shirt, and came toward her in menacing fashion as if to grab her in sexual manner); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 129 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (supervisor made numerous sexual comments, including expressing desire to hold "a wet T-shirt contest" with plaintiff as contestant); *Garcia v. Schwab*, 967 S.W.2d 883, 885 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) (supervisor stared at and commented on plaintiff's breasts, touched his genitals in front of plaintiff, discussed highly personal and sexual matters with plaintiff, remarked on plaintiff's appearance, repeatedly made sexual references, and insulted and yelled at plaintiff).

Lastly, we note that once a plaintiff establishes a prima facie case of hostile-work-environment sexual harassment, we do not need to engage in the *McDonnell Douglas* burden-shifting analysis. *Resendiz*, 642 S.W.3d at 186. First, we do not need to apply the *McDonnell Douglas* framework when the plaintiff has direct

29

evidence of the harassment, as Carter does here. *Cf. Clark*, 544 S.W.3d at 782 (*McDonnell Douglas* framework applies when plaintiff tries to prove discrimination with circumstantial evidence). Second, unlike discrimination claims involving an adverse employment action for which an employer must provide a nondiscriminatory reason for the action to avoid liability, with a sexual-harassment claim, the harassment itself is the discrimination, and there "simply is no legitimate business justification for severe or pervasive sexual harassment." *Resendiz*, 642 S.W.3d at 186 (quoting *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 653 (D. Md. 2002)).

### 2.    *Analysis*

Here, the City argues Carter has not established a prima facie case of hostile-work-environment sexual harassment. The City concedes the first two elements: Carter was subjected to unwelcome sexual harassment, and the harassment was because of her sex. *See Clark*, 544 S.W.3d at 771. And Carter need not prove a basis for holding the City liable because her supervisor sexually harassed her. *See Donaldson*, 495 S.W.3d at 445. Thus, the only issue is the third element, whether the harassment was so severe or pervasive as to alter the terms or conditions of employment and create a hostile work environment. *Clark*, 544 S.W.3d at 771.

In its brief, the City argues that Carter's "sole ground" for the alleged discrimination was a comment Johnson made claiming she was not a good candidate

30

for promotion. But Johnson's unwelcome sexual advances were themselves discriminatory conduct. *See Zeltwanger*, 144 S.W.3d at 445 (sexual harassment is type of sex discrimination). In her hostile-work-environment sexual-harassment claim, Carter was not required to prove that she also suffered some adverse employment action like being denied a promotion, as the City seems to argue. Our inquiry is whether Johnson's unwelcome sexual advances were severe and pervasive enough to alter the terms and conditions of Carter's employment and create a hostile work environment. *See Clark*, 544 S.W.3d at 771.

We conclude Carter has not alleged conduct that rises to the level required for an actionable claim of hostile-work-environment sexual harassment. It is undisputed that Johnson sexually harassed Carter, and even the OIG's investigation concluded that Johnson did so. But not all sexual harassment is actionable under the TCHRA. *See, e.g.*, *Shepherd*, 168 F.3d at 874 (coworker's harassment, though "boorish and offensive," not so extreme as to establish hostile work environment).

In determining whether the sexual harassment created a hostile or abusive work environment, we may consider the frequency and severity of the conduct. *Donaldson*, 495 S.W.3d at 445. Johnson sent sexually suggestive text messages frequently over about six months, sometimes sending multiple messages in a day with no response from Carter. Though the text messages were frequent, inappropriate, and at times explicit, courts have found much more severe conduct

31

did not create a hostile work environment. *E.g.*, *Hockman,* 407 F.3d at 321–22 (supervisor made sexually suggestive remarks to plaintiff, repeatedly insisted that she be alone with him, brushed up against plaintiff's breast and behind, once tried to kiss her, once stood in bathroom doorway while plaintiff was present, and once swatted plaintiff's behind with newspaper). In another case in which a supervisor sent his employee "many sexually explicit messages," the Fifth Court of Appeals determined the supervisor had created a hostile work environment, but in that case, the supervisor also sent a sexually explicit video and naked pictures, repeatedly made sexual comments about the employee's social-media photos, would stand close to her at work and rub his body against hers, took unsolicited photos of her, and followed her to her car when she left work, and the employee testified she felt unsafe and had nightmares about being harassed. *Harris v. Fossil Grp., Inc.*, No. 05-21-01018-CV, 2023 WL 1794030, at *4 (Tex. App.—Dallas Feb. 6, 2023, no pet.) (mem. op.).

The hostile work environment's "severe or pervasive" requirement "is stated in the disjunctive," meaning that the more severe conduct is, the less pervasive it must be to meet the standard, and vice versa. *Twigland Fashions*, 335 S.W.3d at 220 (quoting *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007)). This court stated in *Texas Department of Aging and Disability Services v. Iredia*, that frequent, pervasive conduct reduces the required level of severity to establish a

32

prima facie case. *See* No. 01-13-00469-CV, 2014 WL 890921, at *6 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.). Here, Johnson's text messages were frequent and pervasive, but they were still less severe than the conduct in *Iredia*. In *Iredia*, the plaintiff's supervisor daily called her names like "skinny skeleton" and "skinny bone" in front of her coworkers, stated he disliked skinny women because it hurt him to lay on top of them, stated no man would want a "skinny bone" like the plaintiff and that was why her husband left her, stated that he hated Nigerian women (which the plaintiff was), and repeatedly threatened to fire her. *Id.* at *1–2, *6–7.

We may also consider whether the conduct was physically threatening or humiliating. *Donaldson*, 495 S.W.3d at 445. Carter alleged, and the City did not dispute, that once Johnson grabbed her and tried to kiss her. Under some circumstances, such unwanted physical contact can be threatening or humiliating, but Carter, though rejecting Johnson's advance, did not indicate she felt threatened or humiliated. *Cf. Iredia*, 2014 WL 890921, at *6–7 (concluding plaintiff established prima facie case where supervisor's conduct was both physically threatening and humiliating to plaintiff because supervisor "typically kicked the door of her office upon entering," called her names that disgraced her in front of coworkers, repeatedly threatened to fire her, and plaintiff testified she felt scared working in that environment). Further, the attempted kiss was an isolated instance. *See Hockman*,

407 F.3d at 326 (stating harassment must be more than isolated incident to be actionable); *Phillips v. Caris Life Scis., Inc.*, No. 3:14-CV-3042-L, 2016 WL 10950679, at *8 (N.D. Tex. July 22, 2016) (concluding two instances of nonconsensual, inappropriate physical contact insufficiently severe or pervasive to create hostile work environment), *aff'd*, 715 F. App'x 365 (5th Cir. 2017); *cf. Rivas v. Estech Sys., Inc.*, No. 06-20-00058-CV, 2021 WL 2231262, at *5 (Tex. App.—Texarkana June 3, 2021, no pet.) (mem. op.) (single, extreme incident sufficient to establish hostile work environment when plaintiff discovered supervisor's hidden camera under her desk).

We next consider whether Johnson's text messages unreasonably interfered with Carter's work performance. *See Donaldson*, 495 S.W.3d at 445. Carter did not allege, and offered no evidence to establish, that Johnson's conduct affected her work performance. *Cf. Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 403, 408 (Tex. App.—El Paso 2002, pet. denied) (finding hostile work environment in part because employee testified that having to work with harasser damaged his work efficiency because he feared harasser, that he did not want to go to work, and that he suffered from depression, nervousness, moodiness, loss of sleep, and nausea as result of harasser's conduct). Carter has not alleged or offered any evidence to prove that Johnson's conduct undermined her workplace competence. *See Hockman*, 407 F.3d at 326 (stating court may consider whether harassing conduct undermined plaintiff's

34

workplace competence); *County of El Paso v. Aguilar*, 600 S.W.3d 62, 88 (Tex. App.—El Paso 2020, no pet.) (concluding plaintiff established prima facie case of hostile work environment where subordinate employee would constantly undermine her with statements such as "a woman could not handle the job," "women belong in kitchen," and "women should never be supervisors of a man").

Considering the totality of the circumstances, while Johnson's conduct was offensive and inappropriate, it is not more severe or pervasive than other cases in which courts have concluded the plaintiff did not establish a prima face case of hostile work environment. Anti-discrimination statutes do not establish a "general civility code for the American workplace." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999). Cases in which the Supreme Court has found a hostile work environment "involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment. . . . The extreme facts recited in those cases highlight the intensity of the objectionable conduct that must be present in order to constitute an actionable hostile environment claim." *Id.* at 264 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

Because we conclude Carter did not establish a prima facie case of hostile-work-environment sexual harassment, we need not decide whether the City established the *Faragher/Ellerth* affirmative defense.[5] *See* TEX. R. APP. P. 47.1.

We sustain the City's third issue.

## CONCLUSION

Because we conclude Carter did not raise a fact issue as to her retaliation claim and did not allege sufficient facts to establish a prima facie case of actionable hostile-work-environment sexual harassment against her governmental employer, governmental immunity has not been waived. Thus, the trial court erred in denying the City's plea to the jurisdiction. We therefore reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Carter's claims for lack of jurisdiction.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

---

[5] An employer may assert a two-part affirmative defense to hostile-work-environment claims "when the employer (1) exercised reasonable care to prevent and correct promptly the harassing behavior and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Williams*, 313 S.W.3d at 806; *see also Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.