

# NUMBER 13-24-00588-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION,                                              Appellant,

v.

CRISTAL ROJAS,                                                   Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 1
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

Appellant Texas Health and Human Services Commission (HHSC) challenges the

trial court's denial of its plea to the jurisdiction in this employment discrimination suit

brought by appellee Cristal Rojas. By two issues, HHSC argues that the trial court erred

when it denied its plea to the jurisdiction as to Rojas's hostile work environment and sex

discrimination claims under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code Ann. §§ 21.001–.556. We reverse and render.

## I. Background

Rojas began her employment at the Rio Grande State Supported Living Center (RGSSLC) on April 1, 2022, as a Direct Support Professional. RGSSLC is overseen by the HHSC and provides long-term care for individuals with "intellectual and developmental disabilities who are medically fragile or who have behavioral problems." In her amended petition, filed on November 8, 2023, Rojas alleged that she was "subjected to overt and pervasive sex discrimination, primarily orchestrated and perpetuated by her immediate supervisors" at RGSSLC. She further alleged that she was "[o]n multiple occasions, deliberately assigned to a male patient known within the facility for his pattern of sexually assaulting and harassing female staff members." According to Rojas, this male patient required "1:1 direct supervision, necessitating a dedicated staff member to be present with him in shifts lasting up to two hours." The male patient preferred to be assigned a female staff member and would display "disruptive behavior if one was not assigned," and "the supervisors, with apparent intent, routinely assigned female staff members, including [Rojas], to care for him."

Rojas alleged that she reported the male patient's "unwelcome[d] sexual harassment" to her supervisors and was "assured that the matter would be addressed . . . and . . . instructed to document every incident." Rojas complains that RGSSLC took no action "[d]espite these assurances." According to Rojas, "when female patients requested male caregivers, the supervisors declined these requests, purportedly

2

to guard against potential false accusations against male staff members." Rojas alleged that this contrasting treatment evidenced "a discriminatory practice against female employees, putting them in hostile and perilous situations while male counterparts received protective treatment." She asserted that this treatment "deprived her of an equal employment opportunity that was provided to male employees similarly situated." Rojas alleged that she resigned from her position on July 28, 2022, due to the "hostile, unsafe, and discriminatory environment that was allowed to persist." Rojas further alleged that she was constructively discharged by HHSC because the intolerable working conditions compelled her to resign "to safeguard her physical and emotional well-being," and that "a reasonable person in the same position would have also felt compelled to resign." We construe Rojas's amended petition as raising a claim of sex discrimination and a claim of sexual harassment based on a hostile work environment.

On July 24, 2024, HHSC filed a plea to the jurisdiction asserting its immunity from suit under the TCHRA. HHSC argued, among other things, that Rojas had presented "no evidence" to support a prima facie case of her sex discrimination and hostile work environment claims, which she was required to do in order to establish HHSC's waiver of sovereign immunity.[1] HHSC attached the following exhibits to its plea: Joint Proposed Docket Control Order; requests for production; first set of interrogatories; requests for admissions; and Rule 194 disclosures.

---

[1] HHSC also argued "[i]n the past eight months since HHSC served Rojas with discovery, she failed to respond, and declined to conduct her own discovery despite being given multiple deadline extensions." Because the discovery deadline was less than 30 days from the filing of HHSC's plea to the jurisdiction, HHSC posited that Rojas was "too late . . . to serve discovery requests on HHSC."

On August 2, 2024, Rojas filed a motion to mediate the case. On August 8, 2024, HHSC filed a response requesting the trial court to deny the motion to mediate, suggesting that it would be improper for the trial court to order mediation prior to ruling on HHSC's plea to the jurisdiction.

On September 9, 2024, Rojas filed a response to HHSC's plea and asserted that it was "improper and procedurally incorrect" because it "address[ed] matters that relate[d] to the merits of the case." Rojas requested the trial court to deny the plea "as improperly categorized and not filed with the Court."

On November 1, 2024, Rojas filed a motion to strike her deemed admissions, arguing that "[a]ny delay in filing responses was not due to intentional disregard of procedural rules but rather due to administrative delays that [Rojas] has promptly addressed." Rojas subsequently filed her response to HHSC's request for admissions and filed her own request for admissions on HHSC. On the same day, Rojas filed her second response to HHSC's plea to the jurisdiction with an attached affidavit. Rojas asserted that "[d]uring the course of this lawsuit, [she] ha[s] conducted discovery, including [r]equests for [a]dmissions served on [HHSC]. [HHSC]'s responses contain[ed] denials that create genuine issues of material fact[s] about the knowledge of harassment, their inadequate response, and the discriminatory treatment based on my gender."

On November 4, 2024, the trial court held a brief hearing on HHSC's plea and took the case under advisement because it had not reviewed the documents on file. The trial court requested that the parties each "submit an order as to what [they] want [the court]

4

to consider as well, and [the court] w[ould] make a decision on either one." On November 8, 2024, HHSC filed a reply in support of its plea to the jurisdiction.

On November 12, 2024, the trial court entered its order denying HHSC's plea to the jurisdiction. In the order, the trial court issued the following findings:

1. Genuine Issues of Material Fact Exist: [Rojas] has provided sufficient evidence to establish genuine issues of material fact regarding [HHSC's] alleged conduct, the existence of a hostile work environment, and the conditions leading to [HHSC's] constructive discharge.

2. Jurisdictional Facts Are Disputed: [HHSC's] reliance on deemed admissions is unfounded, as [Rojas] has moved to strike these deemed admissions and has substantively responded to all Requests for Admissions. [HHSC's] own responses to [Rojas's] discovery requests reveal disputed facts that are material to the jurisdictional inquiry.

3. Texas Labor Code Chapter 21 Applies: The allegations raised by [Rojas] fall under the protections of the Texas Labor Code, Chapter 21, which provides this Court with jurisdiction to hear claims regarding employment discrimination and hostile work environment. [Rojas] has sufficiently alleged compliance with procedural prerequisites under the statute.

This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over a plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). The TCHRA waives immunity for claims of an "unlawful employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. §§ 21.002(8)(D), 21.051.

To prevail on an assertion of sovereign immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Pleadings are construed liberally in favor of the pleader and a plaintiff "should be afforded the opportunity to amend" if the challenged jurisdictional defect may be cured with further factual allegations. *Tex. Tech. Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). A court cannot sustain a plea to the jurisdiction if the pleadings generate a fact question. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *see also City of Corpus Christi v. Muller*, No. 13-18-00443-CV, 2019 WL 2384162, at *1 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op.).

If jurisdictional facts are challenged, as in this case, our standard of review mirrors that of a summary judgment where we consider evidence necessary to resolve the jurisdictional issues. *Alamo Heights*, 544 S.W.3d at 770–71. "When there is a dispute over jurisdictional facts, the plaintiff must raise a genuine issue of material fact as to the immunity waiver's applicability." *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024); *see also City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022) (It is

6

foundational that the "party suing the governmental [entity] bears the burden of affirmatively showing waiver of immunity.") Thus, a plaintiff can only survive a plea to the jurisdiction "by showing that the statute 'clearly and affirmatively waive[s] immunity' and by also 'negating any provisions that create exceptions to, and thus withdraw, that waiver.'" *Powell*, 704 S.W.3d at 447 (quoting *Rattray v. City of Brownsville*, 662 S.W.3d 860, 867 (Tex. 2023)). While a plaintiff need not anticipate every possible defense, if their pleadings indicate a particular defense, the government is not charged with producing additional evidence to invoke that defense. *Id.*

Thus, a plea to the jurisdiction can be "like a no-evidence motion for summary judgment by asserting that the plaintiff has produced no evidence of an element required for the immunity waiver to apply." *Id.* In such a circumstance, the plaintiff can then respond by producing evidence of that waiver. *Id.* The controlling question, regardless of who attached evidence, is "whether the nonmovant raised a fact issue to preclude summary judgment." *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024). The plaintiff ultimately bears the evidentiary burden to establish a waiver of immunity. *Powell*, 704 S.W.3d at 448.

"[A]ll the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see Maspero*, 640 S.W.3d at 528–29 ("[W]e take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor."). If "the pleadings and evidence generate a 'fact question on jurisdiction,' dismissal on a plea to the jurisdiction is improper," and

the fact issue will be resolved at trial by the factfinder. *Maspero*, 640 S.W.3d at 529 (citing *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam)). "However, 'if the evidence is undisputed or fails to raise a fact question,' the plea must be granted." *Id.* (quoting *Hayes*, 327 S.W.3d at 116). A plaintiff may rely on either direct or circumstantial evidence. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020)*.* "In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *Alamo Heights*, 544 S.W.3d at 782.

To make a prima facie showing of sexual harassment based on a hostile work environment, Rojas is required to show that (1) she was subjected to unwelcome sexual harassment, (2) she was harassed because of her sex, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment, and (4) some basis for holding the employer liable. [2] *Alamo Heights*, 544 S.W.3d at 771. For an employer's conduct to rise to the level of a hostile work environment, it must be both objectively and subjectively hostile or abusive, or in other words, the work environment must be both one that a reasonable person would find hostile or abusive and one that the victim in fact perceived it to be. *See Texas Dep't of Aging and Disability Servs. v. Loya*, 491 S.W.3d 920, 926 (Tex. App.—El Paso 2016, no pet.) (citing *Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 712–13 (Tex. App.—El Paso 2015, no pet.)); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, (1993).

---

[2] "Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" we consider analogous federal cases interpreting Title VII. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (quoting Tex. Lab. Code Ann. § 21.001(1)).

Sexual harassment claims generally take one of two forms: "(1) quid-pro-quo harassment, in which the harasser demands sexual favors as a condition for granting employment or its benefits, or (2) harassment that creates a hostile or offensive work environment." *Alamo Heights*, 544 S.W.3d at 806; *Mayfield*, 467 S.W.3d at 712.

In assessing objective hostility or abusiveness, we consider the totality of the circumstances, including "the frequency and severity of the alleged conduct, whether there were physical threats or humiliation, and whether the abusive conduct unreasonably interfered with the employee's work performance." *See Loya*, 491 S.W.3d at 926 (*citing Harris*, 510 U.S. at 23). Although the plaintiff need not demonstrate that the conduct caused her a "tangible psychological injury," she must demonstrate that it was more than "merely offensive." *Mayfield*, 467 S.W.3d at 713 ("Abusiveness requires extreme conduct, and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury."); *see also Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 407 (Tex. App.—El Paso 2002, pet. denied) (explaining that a showing of tangible psychological injury such as a nervous breakdown is not required to support a harassment claim).

A prima facie case of discrimination on the basis of sex under the TCHRA requires evidence that Rojas: (1) was a member of the protected class; (2) was qualified for her position; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by someone outside her protected class or (b) otherwise treated less favorably than similarly situated employees. *See Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.); *see generally Flores*, 612 S.W.3d

9

at 312 ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005))).

Texas courts analyze claims of discrimination utilizing the burden-shifting framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mission*, 372 S.W.3d at 634. Under that framework, the plaintiff's initial burden is to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If she satisfies that burden, which has been described as "minimal" and "not onerous," a presumption of discrimination arises. *Id.* The burden then shifts to the employer to defeat the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for the challenged employment action. *Alamo Heights*, 544 S.W.3d at 782. If met, the presumption then disappears, and the burden returns to the employee to produce evidence that the employer's stated reason is false and a pretext for discrimination. *Id.*

Here, HHSC asserted in its plea to the jurisdiction, and now on appeal, that Rojas produced no evidence to establish a prima facie case of either hostile work environment or sex discrimination. We therefore need address only the prima facie stage of the burden-shifting analysis with respect to Rojas's sex discrimination claim.[3]

---

[3] We note that the *McDonnell Douglas* burden shifting analysis is not applicable to claims of sexual harassment based on hostile work environment once a court concludes that a plaintiff has met her burden to establish a prima facie case. *See Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.) (collecting cases).

### III. HOSTILE WORK ENVIRONMENT

In its first issue, HHSC argues that Rojas failed to produce any evidence to support her claim of a hostile work environment. Specifically, HHSC contends that Rojas presented no evidence to show that the complained-of harassment (1) affected a term, condition, or privilege of employment, or (2) was based on a protected characteristic. We address only HHSC's first sub-issue because it is dispositive.

Initially, we note that Rojas's live petition did not allege quid-pro-quo harassment. Rather, Rojas alleged that sexual harassment from a nonemployee resident created a hostile work environment. In connection to its argument that Rojas presented no evidence to show that the harassment complained of affected a term, condition, or privilege of employment, HHSC argues that Rojas was required to provide evidence showing that the "harassment went beyond what an 'objectively reasonable caregiver' would expect to experience given the unique nature of the workplace," citing *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019).

In *Gardner*, the Fifth Circuit Court of Appeals recognized that claims of sexual harassment under Title VII "typically involve the behavior of fellow employees," but "[b]ecause the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist—nonemployees can be the source of the harassment." *Id.* at 321–22 (cleaned up). The court discussed the difficulty of applying the principle that an employer can be liable for a hostile work environment created by nonemployees in a case where "a nurse allege[d] that an assisted

11

living facility allowed such an environment to continue by not preventing a resident's repetitive harassment." *Id.* at 322. The court held that "the diminished capacity of patients influences whether the harassment should be perceived as affecting the terms and conditions of employment." *Id.* However, the court concluded that "the evidence of persistent and often physical harassment by [the resident] is enough to allow a jury to decide whether a reasonable caregiver on the receiving end of the harassment would have viewed it as sufficiently severe or pervasive even considering the medical condition of the harasser." *Id.* at 327. "The frequency and nature of the conduct, along with its effect on Gardner's employment, would allow (but not require) that finding." *Id.*

The evidence involved in this case is sparse, consisting only of the parties' responses to each other's request for admissions and Rojas's affidavit. In her response to HHSC's request for admissions, Rojas admitted that "it was an essential function of [her] position to manage aggressive behavior in individuals"; that "some residents at RGSSLC are known to exhibit inappropriate behaviors"; that "certain residents housed at RGSSLC exhibit sexually inappropriate or aggressive behaviors"; that "[she] received Ukera training" and that "Ukera training is a restraint-free method designed to manage aggression"; that "[she] received Safe Use of Restraint (S.U.R.) training" and that "S.U.R. training includes the proper restraint techniques for instances where a patient or client may be in imminent danger"; that "[she was] required as part of [her] job duties to perform Ukeru and S.U.R."; that [she] reported an incident involving [the male patient referred to in her petition] to [her] supervisor on June 9, 2022"; and that "[she] was reassigned from this patient following [her] report on June 9, 2022." In its response to Rojas's requests for

12

admissions, HHSC admitted, among other things, that "[Rojas] mentioned to other staff that a male patient was harassing her"; that "[the] male patient was known to harass both male and female staff members and that both male and female staff members were assigned to said patient."

Rojas averred in her affidavit that she was "repeatedly assigned to work with a male patient who had a known history of sexually aggressive behavior toward female staff. The patient frequently exhibited inappropriate and unwelcome sexual behavior toward [her], including physical contact and sexually explicit remarks." Rojas also attested that she reported the "incidents of harassment to [her] supervisors multiple times, specifically to [Alan Garcia], [Velma], [Juan R.], and [Hector G.]," that she "documented these incidents, and [her] supervisors were aware of the patient's behavior, yet no effective corrective actions were taken to prevent further harassment." According to Rojas, "despite [her] repeated complaints and documentation of these incidents, [her] supervisors failed to provide [her] with sufficient protection or reassignment to avoid exposure to this patient. [She] was repeatedly placed back with the patient, and no substantial actions were taken to address [her] concerns." Rojas further averred that she "suffered emotional distress, including anxiety and depression, which forced [her] to resign from [her] position . . . to protect [her] physical and mental health."

HHSC argues that "[t]here is no evidence to show that the alleged harassment went beyond what a reasonable caregiver would have expected because there is no evidence in the record showing what actually occurred." HHSC further argues that "[a]n objectively reasonable caregiver would expect to encounter precisely th[e] kind of

13

inappropriate behavior" described in Rojas's affidavit. HHSC further points out that Rojas was "provided with extensive training in dealing with physically aggressive residents," and asserts that "[a]n objectively reasonable caregiver receiving such training would expect to encounter frequent or harassing behavior by the intellectually disabled residents at RGSSLC."

We agree that none of the evidence before us presents a prima facie case as to the third element of Rojas's hostile work environment claim. *See Alamo Heights*, 544 S.W.3d at 771 (providing that a hostile work environment claim requires the plaintiff to prove that "the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment"). Neither Rojas's affidavit nor her admissions disclose any details regarding the physical contact or verbal remarks she alleges she endured. Similarly, the evidence also does not detail the male patient's "known history of sexually aggressive behavior toward female staff." HHSC's admissions did not otherwise elaborate or explain what the harassment consisted of. The evidence before us is a far cry from that presented to the court in *Gardner*, which included detailed evidence of an elderly and mentally ill resident's long history of violent and sexual behavior toward other patients and staff, as well as a detailed account of the plaintiff's personal experiences with the resident—including an incident in which the resident attempted to "grope" the plaintiff's left breast and punched the plaintiff multiple times, including a punch that "landed on the side of her breast," and another incident where the resident grabbed another nurse's "private area." *Gardner*, 915 F.3d at 322–24. In addition, the plaintiff in *Garner* went to the emergency room for injuries sustained from the

resident's assault and was out of work for three months during which time she received workers' compensation. *Id.* at 324. The *Garner* Court concluded that the evidence was "enough to allow a jury to decide whether a reasonable caregiver on the receiving end of the harassment would have viewed it as sufficiently severe or pervasive even considering the medical condition of the harasser." *Id.* at 327. We do not reach the same result here.

After viewing the evidence in the light most favorable to Rojas, we cannot conclude that a reasonable person would find the work environment hostile or abusive.[4] *See Swanson*, 590 S.W.3d at 550; *Maspero*, 640 S.W.3d at 528–29; *Loya*, 491 S.W.3d at 926. Rojas had the burden to show that the complained-of conduct was more than "merely offensive" and failed to do so. *Mayfield*, 467 S.W.3d at 713. Consequently, Rojas has not presented a genuine issue of material fact regarding whether the complained-of conduct was "severe or pervasive enough" that it "altered the conditions of employment and created an abusive work environment." *See Alamo Heights*, 544 S.W.3d at 771. We

---

[4] We note that the trial court's order denying HHSC's plea to the jurisdiction found that "[HHSC's] own responses to [Rojas's] discovery requests reveal disputed facts that are material to the jurisdictional inquiry." We have already concluded above that HHSC's admissions do not support a prima facie case for hostile work environment. We note that Rojas stated in her response to HHSC's plea to the jurisdiction that

> [HHSC]'s responses to [her] Requests for Admissions include multiple denials that confirm the existence of genuine issues of material fact. [HHSC] denies several critical elements related to [Rojas's] claims, including [HHSC's] knowledge of harassment, adequacy of corrective measures, and differential treatment toward female employees. These denials alone create fact issues precluding summary judgment.

We disagree with the above contention. When an answering party denies or refuses to make an admission of fact, such refusal is nothing more than a refusal to admit a fact; it is not evidence of any fact except the fact of refusal. *See Newman v. Utica Nat. Ins. Co. of Tex.*, 868 S.W.2d 5, 8 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Am. Commc'n Telecomm., Inc. v. Commerce N. Bank,* 691 S.W.2d 44, 48 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). We conclude that the trial court erred to the extent it relied on HHSC's denials or refusal to make an admission of fact as a basis for denying HHSC's plea to the jurisdiction.

sustain HHSC's first issue.[5]

## IV. SEX DISCRIMINATION

In their second issue, HHSC argues that Rojas failed to produce sufficient evidence to support her sex discrimination claim. Specifically, HHSC argues that Rojas failed to produce any evidence (1) that she suffered an adverse employment action or (2) that she was treated less favorably than a similarly situated person outside her protected class. We address HHSC's second sub-issue first because it is dispositive.

Rojas alleged in her amended petition that "when female patients requested male caregivers, the supervisors declined these requests, purportedly to guard against false accusations against male staff members." Rojas further alleged that this "contrasting treatment evidences a discriminatory practice against female employees, putting them in hostile and perilous situations while male counterparts received protective treatment." Rojas asserted that this treatment "deprived her of an equal employment opportunity that was provided to male employees similarly situated."[6] HHSC argues that Rojas failed to produce any evidence supporting these allegations. We agree. None of the evidence before the trial court on HHSC's plea to the jurisdiction, including Rojas's affidavit and response to HHSC's request for admissions, support Rojas's allegation that she was treated less favorably than similarly situated employees outside her protected class. *See Monarrez*, 177 S.W.3d at 917; *Resendiz*, 642 S.W.3d at 173; *Flores*, 612 S.W.3d at 312.

---

[5] Because we have sustained HHSC's first issue, we decline to address HHSC's remaining sub-issue. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[6] We note that Rojas did not allege in her amended petition that she was replaced by someone outside her protected class. *See Resendiz*, 642 S.W.3d at 173.

16

Thus, Rojas failed to satisfy her evidentiary burden to establish a waiver of immunity. *See Powell*, 704 S.W.3d at 448. Because Rojas failed to present a prima facie case of sex discrimination, the trial court erred in denying HHSC's plea to the jurisdiction as to that claim. We sustain HHSC's second issue.[7]

## IV. CONCLUSION

We reverse the trial court's order denying HHSC's plea to the jurisdiction and render judgment dismissing Rojas's sex discrimination and hostile work environment claims for want of jurisdiction.

CLARISSA SILVA
Justice

Delivered and filed on the
7th day of August, 2025.

---

[7] Because this sub-issue is dispositive to HHSC's second issue, we decline to address HHSC's other sub-issue. *See* TEX. R. APP. P. 47.1.

17